MICHELE M. BETTI, ESQ.
LAW OFFICES OF BETTI & ASSOCIATES
30 Wall Street, 8th Floor
New York, New York 10005
Telephone:  (646) 895-0939
Facsimile:  (760) 454-2204
Email:  mbettilaw@gmail.com


Attorneys for Plaintiff
ARTHUR PORADA, JR


## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF NEW YORK

100 State Street, Rochester, NY 14614


| | |
|---|---|
| ARTHUR PORADA, JR an individual, | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | 1.  Offensive Physical Contact/Childhood Sexual Assault/Battery; |
| THE DIOCESE OF BUFFALO, N.Y.; ST. ALOYSIUS CATHOLIC CHURCH; ST. ALOYSIUS CATHOLIC SCHOOL; JAMES A. SPIELMAN; and DOE DEFENDANTS 1-10, inclusive, | 2.  Imminent Battery/Assault; 3.  Negligence; 4.  Negligent Supervision/Failure to Warn; 5.  Negligent Hiring/Retention; 6.  Fraud; 7.  Actual Fraudulent Transfers; 8.  Constructive Fraudulent Transfers; |
| Defendants. | 9.  Unjust Enrichment; 10.  Negligent Infliction of Emotional Distress; 11.  Intentional Infliction of Emotional Distress; 12.  Premises Liability; 13.  Punitive Damages. |
| | **[Demand for Jury Trial]** |

Based upon information and belief available to Plaintiff at the time of the filing of this Complaint, Plaintiff makes the following allegations:

## **PARTIES**

1.      Plaintiff Arthur Porada, Jr. ("Plaintiff") is an adult male, and a citizen of New Hampshire residing in Hillsborough County, New Hampshire.  Plaintiff was born on June 3, 1958, and is currently 61 years old.  Plaintiff was a minor between the ages of 13 to 16 years old at the time the sexual abuse alleged herein occurred.

2.      Defendant The Diocese of Buffalo, N.Y. ("Defendant Diocese") is a Domestic Nonprofit Corporation, authorized to conduct business and conducting business in the State of New York, with its principal place of business in Erie County, New York at 795 Main St, Buffalo, New York 14203.  Defendant Diocese has responsibility for Roman Catholic Church operations in Buffalo, New York and surrounding counties.  Defendant Diocese is the Diocese in which the sexual abuse occurred.

2.1      Defendant St. Aloysius Catholic Church aka St. Aloysius Church of Springville ("Defendant Church") is a Roman Catholic Church or Parish, authorized to conduct business and conducting business in the State of New York, with its principal place of business located in Erie County, New York at 190 Franklin Street, Springville, New York 14141.  Defendant Church is the parish or

other organization that knew, had reason to know, or was otherwise on notice of the fact that the Perpetrator was abusing and molesting minors before and during the time the Perpetrator was abusing and molesting Plaintiff Arthur Porada, Jr. Plaintiff was a student, altar boy and/or member of Defendant Church when the Perpetrator abused and molested him.

2.2    Defendant St. Aloysius Catholic School ("Defendant School") is a Roman Catholic school, authorized to conduct business and conducting business in the State of New York, with its principal place of business located in Erie County, New York at 190 Franklin Street, Springville, New York 14141.    Defendant School is the school or other organization that knew, had reason to know, or was otherwise on notice of the fact that the Perpetrator was abusing and molesting minors before and during the time the Perpetrator was abusing and molesting Plaintiff Arthur Porada, Jr.    Plaintiff was a student and/or member of Defendant School when the Perpetrator abused and molested him.

2.3.    Defendant James A. Spielman ("Perpetrator"), is a resident and citizen of Hawaii, and was at all times relevant an ordained priest and employee in the Roman Catholic Church employed by and in the Diocese and assigned to various schools and churches including St. Aloysius Church and School.  During the dates of abuse, the Perpetrator was a practicing priest and teacher assigned to, working at, and/or performing services for Defendant Diocese, Defendant Church,

Defendant School, and Does 1 through 10, and was under the direct supervision, employ and control of each of the Defendants.

2.4.    Defendant Does 1 through 10, inclusive, are individuals and/or business or corporate entities incorporated in and/or doing business in New York and/or Hawaii, whose true names and capacities are unknown to Plaintiff who therefore sues such defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Doe defendant when ascertained.  Each such Defendant Doe is legally responsible in some manner for the events, happenings and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.   Each of the above named Defendants and Does 1 through 10 are sometimes hereinafter referred to collectively as the "Defendants."

3.    The Perpetiff committed acts of abuse against Plaintiff from approximately on or about 1971 through 1976 when Plaintiff was a minor in the 8th grade through sophomore year in high school.

4.    Plaintiff is informed and believes, and on that basis alleges, during the dates of abuse, the Perpetrator was assigned to, working at, and/or performing services for Defendants, and Does 1 through 10, and was under the direct supervision, employment and control of Defendants and Does 1 through 10.

5.    Plaintiff is informed and believes, and on that basis alleges, that each

of the Defendants knew, had reason to know, or was otherwise on notice of the fact that the Perpetrator was abusing and molesting minors before, during and after the time the Perpetrator was abusing and molesting Plaintiff.

6.    Plaintiff is informed and believes, and on that basis alleges, each Defendant is the agent, servant and/or employee of other Defendant, and each Defendant was acting within the course and scope of his, her or its authority as an agent, servant and/or employee of the other Defendants.  Defendants, and each of them, are individuals, corporations, partnerships and other entities which engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint, and Defendants, and each of them, ratified the acts of the other Defendants as described in this Complaint.

7.    Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, Defendants, and each of them, were the agents, servants, employers, masters, servants, or co-conspirators of each of the remaining co-Defendants, and in doing the things hereinafter alleged were acting within the course and scope of such relationship and with the permission, approval, ratification, or consent of their co-Defendants.

8.    Plaintiff is informed and believes, and on that basis alleges, that there exists such a unity of control between the Defendants, any individuality or separateness between the Defendants has ceased, and each of the Defendants is the

alter ego of the other.  Plaintiff is informed and believes, and on that basis alleges, that some of the Defendants own and control the others; that some of the Defendants have the same officers, directors, or partners; that some of the Defendants finance other Defendants; that some of the Defendants pay the salaries and other expenses of other Defendants; that some of the Defendants fail to maintain formalities of separate corporate or partnership existence; that some of the Defendants held themselves out to the public to be the same entity as other Defendants; and that Plaintiff lacked knowledge of the Defendants' separate corporate or partnership existence.  Plaintiff is informed and believes, and on that basis alleges, that adherence to the fiction of the separate existence of the Defendants as distinct entities from each other may promote injustice or fraud.

## JURISDICTION AND VENUE

9.    The district court has original jurisdiction of this civil action in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the matter is between citizens of different States pursuant to 28 U.S.C.A. § 1332 (West).  A corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.  28 U.S.C.A. § 1332 (West).  Defendant Diocese, Defendant Church, and Defendant School are citizens of New York and have their principal place of business in Erie County, New York.  Defendant James A. Spielman is a

citizen of Hawaii.  Plaintiff Arthur Porada, Jr. is a citizen of the State of New Hampshire.  Therefore, this district court has original jurisdiction over this civil action.

10.    Additionally, venue is appropriate in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred, and/or a substantial part of the property that is the subject of this action is situated in this district.

## BACKGROUND FACTS APPLICABLE TO ALL COUNTS

11.    Plaintiff is informed and believes, and on that basis alleges, that the Perpetrator, while he was an ordained priest, was at all times mentioned herein an agent, employee, servant and/or representative of the Defendants, and/or was under the jurisdiction and control of the Defendants.  For example, Plaintiff is informed and believes, and on that basis alleges, the following:

A.    That the Perpetrator Father James A. Spielman was born in 1944.

B.    That in the 1960s the Perpetrator entered Christ the King Seminary, owned by and/or under the jurisdiction and control of Defendant Diocese.

C.    That the Perpetrator was a camp counselor at Camp Turner while waiting to become a priest.  Camp Turner was and still is a resident summer camp for boys and girls age 7 to 16 years operated by the Department of Youth and Young Adult Ministry, owned by and/or under the jurisdiction and control of

Defendant Diocese.

D.     That on or about 1970, the Perpetrator was ordained and incardinated into Defendant Diocese.

E.     That on or about 1970 through 1971, the Perpetrator was an Assistant Pastor at Belmont Scio Parish owned by and/or under the jurisdiction and control of Defendant Diocese, and while the Perpetrator was incardinated into Defendant Diocese.

F.     That on or about 1971 through 1977, the Perpetrator was transferred to St. Aloysius Parish and School owned by and/or under the jurisdiction and control of Defendant Diocese, and while the Perpetrator was incardinated into Defendant Diocese.

G.     That on or about 1978, the Perpetrator was transferred to St. Patrick Church and School owned by and/or under the jurisdiction and control of Defendant Diocese, and while the Perpetrator was incardinated into Defendant Diocese.

H.     That on or about 1979, the Perpetrator was transferred to Archbishop Walsh High School a.k.a. Southern Tier Catholic School Archbishop Walsh Academy in Olean, New York, owned by and/or under the jurisdiction and control of Defendant Diocese, and while the Perpetrator was incardinated into Defendant Diocese.

I.      That on or about 1984, the Perpetrator was transferred to St. Mary Church and School owned by and/or under the jurisdiction and control of Defendant Diocese, and while the Perpetrator was incardinated into Defendant Diocese.

J.      That on or about 1987, the Perpetrator was transferred to St. Peter and Paul Church and School owned by and/or under the jurisdiction and control of Defendant Diocese, and while the Perpetrator was incardinated into Defendant Diocese.

K.      That on or about 1990, the Perpetrator was assigned to The Southdown Institute in Ontario, Canada by Defendant Diocese specifically to treat the Perpetrator for his issues with addiction and mental health relating to the sexual abuse of minors.  The Southdown Institute provided psychological services to the Perpetrator for his child sexual abuse of minors while the Perpetrator was incardinated into Defendant Diocese.  The Perpetrator was at all times under the jurisdiction and control of Defendant Diocese.

L.      That on or about 1991, after spending a year at the Southdown Institute for treatment of pedophilia, the Perpetrator was transferred to St. Mary Church and School owned by and/or under the jurisdiction and control of Defendant Diocese, and while the Perpetrator was incardinated into Defendant Diocese.

M.     That between the years 1970 and 1993, while the Perpetrator was incardinated into Defendant Diocese, the Perpetrator was assigned as assistant pastor and/or visiting priest and/or supply priest to several parishes on the Hawaiian Islands.  These parishes were owned by and/or under the jurisdiction and control of the Diocese of Honolulu.  The Perpetrator sexually abused minors at several parishes on the Hawaiian Islands that were owned by and/or under the jurisdiction and control of the Diocese of Honolulu while the Perpetrator was incardinated into Defendant Diocese, and was at all times under the jurisdiction and control of Defendant Diocese and the Diocese of Honolulu.

N.     That the Perpetrator resigned from ministry in 1993.

12.     Plaintiff is informed and believes, and on that basis alleges, the Perpetrator molested and abused minor students, including Plaintiff, at churches, rectories, schools, and retreat centers, which were owned, operated, and/or controlled by Defendants.

13.     The Plaintiff is informed and believes, and on that basis alleges, that Defendants were aware of, had notice of, and should have known of the molestations and sexual abuse of minor students, including Plaintiff, by the Perpetrator.  For example, Plaintiff is informed and believes, and on that basis alleges, the following:

A.     The Perpetrator had a long history of molesting boys.  The Perpetrator

not only had multiple victims, but he abused those victims over a number of years. The Perpetrator abused minor boys from at least the 1960s through at least 1993.

B.     On or about the 1960s, staff at Camp Turner saw the Perpetrator going into young boy's rooms unaccompanied by another adult.  Allegations of the Perpetrator's abuse were prevalent when he was at Camp Turner.

C.     On multiple Sundays, in 1971-1972, St. Aloysius Associate Pastor Father Hubert Reimann saw Perpetrator Spielman return with Arthur to the rectory from overnight stays at the "Hill."  Fr. Spielman was scheduled to say mass Sunday mornings and Arthur was his serving altar boy on those Sundays.

D.     On or about 1971-1972, Sister Juliana, Principal of St. Aloysius Defendant School, and Plaintiff's 8th grade teacher, saw and knew of times that Plaintiff was alone with the Perpetrator.  Perpetrator Spielman would often pull Arthur out of Sister Juliana's class.

E.     On or about 1972-1976, Claudia Woneverich, leader of the Folk Group Choir, on more than one occasion, saw the Perpetrator hug and inappropriately touch Plaintiff after Plaintiff's participation in the folk group mass.

F.     On or about 1975-1977, Father Norman Lux, associate pastor of St. Aloysius Defendant Church, witnessed boys go upstairs to Perpetrator Spielman's bedroom in the rectory alone.

G.     On or about 1979, the Perpetrator taught religion at Archbishop Walsh

High School in Olean, New York.  Perpetrator Spielman was also the senior class moderator of the school.  Due to Fr. Spielman's abuse of multiple minor students at the school, the name was changed to Southern Tier Catholic School Archbishop Walsh Academy.

H.    On or about 1990, The Southdown Institute specifically treated the Perpetrator James A. Spielman at the request of the Defendant Diocese of Buffalo for his addictions and mental health issues relating to child sexual abuse and pedophilia.  The Southdown Institute was established in the 1980s to help the needs of religious and clergy with addictions and mental health issues.  The Southdown Institute provided psychological services to the Perpetrator, including comprehensive assessments through residential programming to post-residential continuing care by psychologists, psychiatrists, addictions counselors, spiritual directors and other related professionals.

I.    On or about 1991, after spending a year at the Southdown Institute for treatment of pedophilia, the Perpetrator was transferred to St. Mary Church and School.  Despite the Diocese's knowledge that the Perpetrator was not fit to serve in ministry involving interactions with children, the Defendant Diocese released the Perpetrator back into ministry.

J.    The Perpetrator was transferred around from parish to parish.

K.    Employees and agents of Defendants were aware that the Perpetrator

had an unusual interest in minor boys, and had frequent unsupervised contact with minor boys for extended periods of time.

L.    Many of the minor boys who were subjected to sexual abuse, including Plaintiff, reacted to the abuse in ways that should have made Defendants question the circumstances and motivation of the Perpetrator's contact with minor boys.  The minor boys abused and molested by the Perpetrator, including Plaintiff, were young, impressionable and particularly vulnerable.

14.    Plaintiff is further informed and believes, and on that basis alleges, that even though said Defendants knew or should have known the Perpetrator had molested and sexually abused minors, including Plaintiff, and even though said Defendants had actual and constructive knowledge of the abuse, said Defendants covered up the molestations and abuses by the Perpetrator, continued to hold the Perpetrator out as a Catholic priest who could be trusted with minor parishioners and/or minor students, continued to allow the Perpetrator to work with minor parishioners and/or minor students on a daily basis, and continued to move the Perpetrator to different Catholic churches and/or schools within said Defendants, and failed to supervise and/or monitor the Perpetrator to ensure he was not molesting minor parishioners and students again.

**The Perpetrator's Molestations of Plaintiff Arthur Porada, Jr.**

15.    Plaintiff is informed and believes, and on that basis alleges, the

Perpetrator molested him and minor parishioners and/or minor students at churches, rectories, schools and retreat centers located in New York and on the Hawaiian Islands while the Perpetrator was under the control and/or jurisdiction of Defendant Diocese. The Plaintiff is informed and believes, and on that basis alleges, that Defendants were aware of, had notice of, and should have known, of the molestations of minor parishioners and/or students prior to, during and after the abuse of Plaintiff. For example, Plaintiff is informed and believes, and on that basis alleges, the following:

A.    The Perpetrator had a long history of molesting boys. The Perpetrator had multiple victims and abused those victims over a number of years beginning as early as the 1960s for several decades through 1993, when the Perpetrator left the priesthood.

B.    Plaintiff Arthur Porada, Jr. attended Catholic grammar school and church at St. Aloysius located in Springville, New York in the 4th through 8th grades on or about 1968 through 1972.

C.    The Perpetrator, Fr. Spielman, began sexually abusing Plaintiff in or about the 8th grade in 1971-1972 at St. Aloysius when Plaintiff attended school and was an altar boy.

D.    On or about 1971-1972, during the school year, Fr. Spielman requested Sister Juliana, the Principal, to allow him to take three to four boys with

him to the retreat center called "the Hill" located in Scio, New York to help with some work there as they were preparing for a school retreat for the 8th graders. Sister Juliana allowed the boys to leave school early and drive with Fr. Spielman to the retreat center in his church owned vehicle; a Ford station wagon. While at the retreat center Fr. Spielman showed Plaintiff and the boys his collection of Irish whiskey and beer, and his community shower with four to five showerheads.

E.   Fr. Spielman managed to get Plaintiff alone while at the retreat center, and explained to Plaintiff that he had a lot of work on the Hill to do to prepare it for various church events and school retreats. He explained to Plaintiff that Plaintiff could help him if Plaintiff wanted to get out of class early on Fridays and stay overnight and help with work on the weekends.

F.   Plaintiff's parents were devout Catholics and were encouraged that Fr. Spielman was taking an interest in their son and allowing him to help with church and school functions.

G.   One Friday, during the school year, Fr. Spielman was successful in pulling Plaintiff out of class early and taking Plaintiff up to the Scio New York retreat center, aka the Hill, to help him prepare for an upcoming retreat.

H.   While at the Hill, Plaintiff worked on the land with Fr. Spielman cutting shrubs, gardening, mowing the lawn and various other jobs that needed attending. After a long days work outside, Fr. Spielman offered Plaintiff a beer to

quench his thirst from working so hard.  Plaintiff drank the beer and got a little tipsy from it.  Fr. Spielman next brought out pornographic magazines and offered Plaintiff another beer while they were looking at the magazines.    Sometime thereafter, Fr. Spielman brought out his collection of Irish whiskey and wanted Plaintiff to try some while Spielman was preparing dinner.  Plaintiff drank the whiskey and got even more intoxicated.

I.    After dinner, Spielman suggested they take a shower in his shower room to wash off the day's sweat and hard work, and then they could relax a bit more after.

J.    Plaintiff intoxicated now from the beer and whiskey agreed to take a shower.  In the shower, Fr. Spielman began to sexually abuse Plaintiff.  First he rubbed soap over Plaintiff and began rubbing Plaintiff's shoulders and then moved to Plaintiff's genitals.  Spielman then asked Plaintiff to touch Spielman's genitals. Plaintiff, only an 8th grader, intoxicated, felt compelled to do so.

K.    After showering, Spielman suggested Plaintiff and he move to the fireplace where they could lie in front of it naked to dry off.  To lure victims to the fireplace, Spielman never had towels available in the shower area.  Spielman put down pillows in front of the fireplace on a rug and Spielman lied down first on his stomach.  Then he told Plaintiff to lie down on top of him.  Spielman then asked Plaintiff to give him a back massage.  While Plaintiff was massaging Spielman's

back, Spielman began to masturbate. Spielman then turned over and had Plaintiff finish masturbating him to ejaculation. During this time, Spielman touched Plaintiff's penis and masturbated him. After Spielman cleaned himself up from ejaculation, he encouraged Plaintiff to lie on the couch and watch television.

L.    On four to five occasions, in addition to the abuse that took place in front of the fireplace, Spielman would take Plaintiff up to Perpetrator's bedroom and sexually abuse Plaintiff.

M.    After abusing Plaintiff, Spielman would utter the words, "God Bless You," and to tell Plaintiff that he allowed him to let down his hair and be free sexually.

N.    This pattern of abuse continued from the 8th grade through Plaintiff's sophomore year in high school when Plaintiff was a member of the St. Aloysius Scio Catholic Youth Organization. Fr. Spielman was the Youth Minister of this organization. There were many retreats for the Youth Organization at the Hill. During this time, Spielman would have Plaintiff come up to the Hill under the to help prepare for the Youth retreats. Spielman would show Plaintiff pornography, give him beer and whiskey and abuse Plaintiff during these times.

O.    The acts of sexual abuse and molestation included, but were not limited to, touching and fondling of the genitals through clothes, fondling of the genitals (skin to skin), fondling of the buttocks through clothes, fondling of the

buttocks (skin to skin), hugging in a sexual manner, rubbing or massaging of the body over clothes, masturbation of minor (skin to skin), forced masturbation of perpetrator (skin to skin), showing pornography, giving alcohol, pre-sexual grooming (giving money), and other things.

P.    While an altar boy at St. Aloysius Church, Fr. Spielman abused Plaintiff in the church and sacristy before and after mass.  Fr. Spielman requested Plaintiff to say mass with him during his 8th grade year.  Fr. Spielman after abusing Plaintiff at the Hill would drive he and Plaintiff back to the rectory to ready for Sunday mass.  From there, Plaintiff's parents would pick him up after the masses.

Q.    As a direct result of the wrongful conduct alleged herein, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer spiritually; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and continues to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical, physiological, psychological treatment, therapy, and counseling.

16.    It was well known to everyone in the church, the rectory, and the school the reason Fr. Spielman was taking young boys to the hill – to show them

pornography, give them alcohol and commit acts of sexual abuse on the boys.

17.    Volunteers, employees and/or agents of Defendants were aware the Perpetrator had an unusual interest in boys, including Plaintiff, and had frequent unsupervised contact with these boys, including Plaintiff, for extended periods of time.

18.    Many of the minor boys, including Plaintiff, who were subjected to sexual abuse by the Perpetrator reacted to the abuse in ways that should have made each of the Defendants question the circumstances and motivation of the Perpetrator's contact with these minor boys, including Plaintiff.  The minor boys, including Plaintiff, the Perpetrator abused and molested, were young, impressionable, particularly vulnerable and under the care of Defendants.

19.    The sexual abuse and exploitation of Plaintiff and the circumstances under which it occurred caused Plaintiff to develop various psychological coping mechanisms and physiological injuries as a result of the child sexual abuse.

20.    Plaintiff is further informed and believes, and on that basis alleges, that even though the Defendants knew and/or should have known the Perpetrator had molested and sexually abused minors, including Plaintiff, and even though the Defendants had actual and/or constructive knowledge of the molestations and sexual abuses, the Defendants covered up the molestations and abuses by the Perpetrator, continued to hold the Perpetrator out as Catholic priest and teacher

who could be trusted with minor parishioners and/or minor students, including Plaintiff, continued to allow the Perpetrator to work with minor parishioners and/or minor students, including Plaintiff, on a daily basis, and failed to supervise and/or monitor the Perpetrator to ensure he was not abusing minor parishioners and/or minor students, including Plaintiff.

## FIRST CAUSE OF ACTION
### (Offensive Physical Contact/Childhood Sexual Assault/Battery)
### (Against All Defendants)

21.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

22.    From approximately 1971 through approximately 1976, the Perpetrator intentionally and recklessly did acts which resulted in harmful and offensive contact with the Plaintiff's person, including but not limited to:  touching and fondling of the genitals through clothes, fondling of the genitals (skin to skin), fondling of the buttocks through clothes, fondling of the buttocks (skin to skin), hugging in a sexual manner, rubbing or massaging of the body over clothes, masturbation of minor (skin to skin), forced masturbation of perpetrator (skin to skin).   The Perpetrator engaged in unpermitted, harmful and offensive sexual conduct and contact upon the person of Plaintiff.   Said conduct was undertaken while the Perpetrator was an employee, volunteer, representative, or agent of Defendants, while in the course and scope of employment and/or duties with said

Defendants, and/or was ratified by said Defendants.

23.    The Perpetrator did the aforementioned acts with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff.

24.    Because of the Perpetrator's position of authority over Plaintiff, and Plaintiff's mental and emotional state, Plaintiff, a minor, was unable to, and did not give meaningful consent to the aforementioned acts.

25.    Prior to or during the abuse alleged above, said Defendants knew, had reason to know, or were otherwise on notice of unlawful sexual conduct by the Perpetrator.    Said Defendants failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of unlawful sexual conduct in the future by the Perpetrator, including, but not limited to, preventing or avoiding placement of the Perpetrator in functions or environments in which contact with children was an inherent part of those functions or environments.    Furthermore, at no time during the periods of time alleged did Defendants have in place a system or procedure to supervise and/or monitor employees, volunteers, representatives, or agents to insure they did not molest or abuse minors in Defendants' care, including the Plaintiff.

26.    As a direct, legal and proximate result of the acts of Defendants, and each of them, Plaintiff sustained serious, and permanent injuries to his person.

27.    As a result of the above-described conduct, Plaintiff has suffered, and

continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer spiritually; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### SECOND CAUSE OF ACTION
### (Imminent Battery/Assault)
### (Against All Defendants)

28.     Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

29.     From approximately 1971 through approximately 1976, the Perpetrator on numerous occasions caused Plaintiff to apprehend an imminent battery for which no consent was given.  Said conduct was undertaken while the Perpetrator was an employee, volunteer, representative, or agent of the other Defendants, while in the course and scope of employment and/or duties with said Defendants, and/or was ratified by said Defendants.

30.     As a direct, legal and proximate result of the acts of Defendants, and each of them, Plaintiff sustained serious, and permanent injuries to his person.

31.    Prior to or during the abuse alleged above, said Defendants knew, had reason to know, or were otherwise on notice of unlawful sexual conduct by the Perpetrator.    Said Defendants failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of unlawful sexual conduct in the future by the Perpetrator, including, but not limited to, preventing or avoiding placement of the Perpetrator in functions or environments in which contact with children was an inherent part of those functions or environments.    Furthermore, at no time during the periods of time alleged did said Defendants have in place a system or procedure to supervise and/or monitor employees, volunteers, representatives, or agents to insure they did not molest or abuse minors in said Defendants' care, including the Plaintiff.

32.    As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer spiritually; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## THIRD CAUSE OF ACTION
### (Negligence)
### (Against All Defendants)

33.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

34.    Defendants had a duty to protect the minor Plaintiff when he was entrusted to their care by Plaintiff's parents.   Plaintiff's care, welfare, and/or physical custody were temporarily entrusted to Defendants.   Defendants voluntarily accepted the entrusted care of Plaintiff.   As such, Defendants owed Plaintiff, and all minor children, a special duty of care, in addition to a duty of ordinary care, and owed Plaintiff the higher duty of care that adults dealing with children owe to protect them from harm.

35.    Defendants also owed Plaintiff a duty to use reasonable care in investigating the Perpetrator; and to provide adequate warning to the Plaintiff, the Plaintiff's family, minor students, and minor parishioners of the Perpetrator's dangerous propensities and unfitness.

36.    Defendants also owed Plaintiff a duty to use reasonable care in connection with the hiring of employees, agents, volunteers, and other representatives.

37.    Defendants, by and through their agents, servants and employees, knew or reasonably should have known of the Perpetrator's dangerous and

exploitive propensities and/or that the Perpetrator was an unfit agent.  It was foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to the Plaintiff, the children entrusted to Defendants' care would be vulnerable to sexual abuse by the Perpetrator.

38.   Defendants breached their duty of care to the minor Plaintiff by allowing the Perpetrator to come into contact with the minor Plaintiff without supervision; by failing to adequately hire, supervise, or retain the Perpetrator who they permitted and enabled to have access to the Plaintiff; by failing to investigate or otherwise confirm or deny such facts about the Perpetrator; by failing to tell or concealing from Plaintiff, Plaintiff's parents, guardians, or law enforcement officials the Perpetrator was or may have been sexually abusing minors; by failing to tell and concealing from Plaintiff's parents, guardians, or law enforcement officials the Plaintiff was or may have been sexually abused after Defendants knew or had reason to know the Perpetrator may have sexually abused the Plaintiff, thereby enabling Plaintiff to continue to be endangered and sexually abused, and/or creating the circumstance where Plaintiff was less likely to receive medical/mental health care and treatment, thus exacerbating the harm done to the Plaintiff; and/or by holding out the Perpetrator to the Plaintiff and his parents or guardians as being in good standing and trustworthy.  Defendants cloaked within the facade of

normalcy Defendants' and/or the Perpetrator's contact and/or actions with the Plaintiff and/or with other minors who were victims of the Perpetrator, and/or disguised the nature of the sexual abuse and contact.

39.    Defendants' conduct was negligent, and constituted an aggravated or magnified failure to use that care which a reasonable person would use to avoid injury to other people.

40.    As a result of the above-described conduct, the Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## FOURTH CAUSE OF ACTION
### (Negligent Supervision/Failure to Warn)
### (Against All Defendants)

41.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

42.    Defendants had a duty to provide reasonable supervision of the Perpetrator; to use reasonable care in investigating the Perpetrator; and to provide

adequate warning to the Plaintiff, the Plaintiff's family, and minor students, of the Perpetrator's dangerous propensities and unfitness.

43.    Defendants, by and through their agents, servants and employees, knew or reasonably should have known of the Perpetrator's dangerous and exploitive propensities and/or that the Perpetrator was an unfit agent.  Despite such knowledge, Defendants negligently failed to supervise the Perpetrator in the position of trust and authority as a Roman Catholic Priest, religious instructor, youth minister, disciplinarian, counselor, school administrator, teacher, surrogate parent, spiritual mentor, emotional mentor, and/or other authority figure, where he was able to commit the wrongful acts against the Plaintiff.  Defendants failed to provide reasonable supervision of the Perpetrator, failed to use reasonable care in investigating the Perpetrator, and failed to provide adequate warning to Plaintiff and Plaintiff's family of the Perpetrator's dangerous propensities and unfitness. Defendants further failed to take reasonable measures to prevent future sexual abuse.

44.    As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life;

has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### FIFTH CAUSE OF ACTION
### (Negligent Hiring/Retention)
### (Against All Defendants)

45.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

46.    Defendants had a duty to not hire and/or retain the Perpetrator, and other employees, agents, volunteers, and other representatives, given the Perpetrator's dangerous and exploitive propensities.

47.    Defendants, by and through their agents, servants and employees, knew or reasonably should have known of the Perpetrator's dangerous and exploitive propensities and/or that the Perpetrator was an unfit agent.  Despite such knowledge, Defendants negligently hired and/or retained the Perpetrator in the position of trust and authority as a Roman Catholic Priest, youth minister, religious instructor, counselor, school administrator, school teacher, surrogate parent, spiritual mentor, emotional mentor, and/or other authority figure, where he was able to commit the wrongful acts against the Plaintiff.  Defendants failed to use reasonable care in investigating the Perpetrator and failed to provide adequate warning to the Plaintiff and the Plaintiff's family of the Perpetrator's dangerous

propensities and unfitness.  Defendants further failed to take reasonable measures to prevent future sexual abuse.

48.    As a result of the above-described conduct, the Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## SIXTH CAUSE OF ACTION
### (Fraud)
### (Against All Defendants)

49.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

50.    Defendants knew and/or had reason to know of the sexual misconduct of the Perpetrator.

51.    Prior to and continuing throughout Plaintiff's attendance at Defendants' facilities including, but not limited to churches, rectories, schools and retreat centers, Defendants made false representations the Perpetrator was a Catholic priest, youth minister, and teacher who could be trusted with minor

parishioners and/or minor students on a daily basis.

52.    Prior to and continuing throughout Plaintiff's attendance at Defendants' facilities including, but not limited to churches, rectories, schools and retreat centers, Defendants made false representations that these facilities provided safe, wholesome, and healthy environments for minor parishioners and/or minor students.

53.    Prior to the time that Plaintiff began attending Defendants' facilities including, but not limited to churches, rectories, schools and retreat centers, Defendants made false representations and/or fraudulent omissions and concealments and/or failed to disclose information relating to the sexual misconduct of the Perpetrator as described herein.  Defendants continued to make false representations, fraudulent omissions and concealments, and failed to disclose information relating to sexual misconduct of the Perpetrator as described herein throughout the time period that Plaintiff attended Defendants' facilities.

54.    Prior to the time Plaintiff began attending Defendants' churches, rectories, schools and retreat centers, Defendants made false representations and/or fraudulent omissions and concealments and/or failed to disclose information relating to their policy, pattern, and practice of transferring abusive priests from parish to parish and school to school, covering up sexual abuse by priests and other employees and/or agents, encouraging victims not to report abuse, failing

themselves to report abuse to parents of children who may have been abused, failing to report abuse to law enforcement authorities, and generally failing to take reasonable steps to prevent sexual abuse.

55.    Defendants made said false representations, fraudulent omissions and concealments and/or failures to disclose with knowledge of their false and fraudulent nature.

56.    Defendants made said false representations, fraudulent omissions and concealments and/or failures to disclose in contemplation of Plaintiff's reliance thereon or without knowledge of their truth or falsity.

57.    Plaintiff justifiably relied upon Defendants' false representations, fraudulent omissions and concealments, and/or failures to disclose.

58.    As a direct result of Defendants' fraud, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer spiritually; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

59.     Additionally, when Plaintiff finally discovered the fraud of Defendants, and continuing thereafter, Plaintiff experienced recurrences of the above described injures.    When Plaintiff finally discovered the fraud of Defendants, and continuing thereafter, Plaintiff experienced extreme and severe mental and emotional distress that Plaintiff had been the victim of the Defendants' fraud; that Plaintiff had not been able to help other minors being molested because of the fraud; and that Plaintiff had not been able because of the fraud to receive timely medical treatment needed to deal with the problems Plaintiff had suffered and continues to suffer as a result of the molestations.

### SEVENTH CAUSE OF ACTION
### (Actual Fraudulent Transfers)
### (Against All Defendants)

60.     Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

61.     A transfer(s) was made and/or an obligation(s) was incurred by the Defendants.

62.     The Defendants were actually fraudulent to Plaintiff.

63.     Plaintiff's claim arose before or after the transfer(s) was made and/or the obligation(s) was incurred.

64.     The Defendants made the transfer(s) and/or incurred the obligation(s) with actual intent to hinder, delay, or defraud Plaintiff.

65.    Plaintiff is a "creditor" under the statute in that he has valid claims against the Defendants and is seeking damages accordingly under such claims.

66.    Plaintiff has a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

67.    As a result of the actually fraudulent transfer(s) and/or incurred obligation(s) incurred by Defendants; Plaintiff was injured and suffered damages.

68.    Defendants' conduct was and is willful and malicious and for sake of example and by way of punishing Defendants, Plaintiff seeks punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION
### (Constructive Fraudulent Transfers)
### (Against All Defendants)

69.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

70.    A transfer(s) was made and/or an obligation(s) was incurred by the Defendants.

71.    The consideration received by the Defendants was unreasonably lower in value than the asset transferred or the obligation incurred.

72.    Plaintiff's claim arose before or after the transfer(s) was made and/or the obligation(s) was incurred.

73.    The Defendants made the transfer(s) and/or incurred the obligation(s) with actual intent to hinder, delay, or defraud Plaintiff.

74.    Plaintiff is a "creditor" under the statute in that he has valid claims against the Defendants and is seeking damages accordingly under such claims.

75.    Plaintiff has a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

76.    The Defendants' remaining assets were unreasonably small in relation to the business or transaction in which they were or were about to be engaged; and/or

77.    The Defendants knew or should have known they would incur debts beyond their ability to pay as they became due; and/or

78.    The Defendants were then insolvent or became insolvent as a result of the transfer(s) or obligation(s).

79.    As a result of the constructively fraudulent transfer(s) and/or obligation(s) incurred by Defendants, Plaintiff was injured and suffered damages.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment and Imposition of Constructive Trust)
### (Against all Defendants)

80.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

81.    The actually and/or constructively fraudulent transfer(s) and/or obligation(s) incurred by Defendants resulted in the unjust enrichment of the Defendants.

82.    As a result of the acts and omissions set forth herein, monies and other assets in which Plaintiff has a superior legal and equitable interest have been possessed and retained, and continue to be possessed and retained, by Defendants, all to the detriment of Plaintiff.

83.    The Defendants had knowledge of the circumstances surrounding the enrichment and thus are obligated to make restitution.  Defendants have been unjustly enriched at Plaintiff's expense by their possession and retention of the monies and other assets mentioned above.

84.    As between Defendants on the one hand and Plaintiff on the other, it would be inequitable and unjust to allow Defendants to possess and retain the monies and other assets mentioned above while depriving Plaintiff of the same.

85.    Defendants are holding the asset(s) subject to the interest of Plaintiff, because Defendants are not a bona fide purchaser of Plaintiff's asset(s).

86.    As a result of the unjust enrichment of Defendants, Plaintiff was injured and suffered damages.  Plaintiff is entitled to an order declaring that all of the monies and other assets held by Defendants as alleged herein are held by Defendants as constructive trustees for Plaintiff, and requiring Defendants to

convey the same to Plaintiff.

## TENTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)
### (Against all Defendants)

87.     Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

88.     As described above, Defendants conduct was negligent, and constituted an aggravated or magnified failure to use that care which a reasonable person would use to avoid injury to other people.

89.     As a result of Defendants' negligence, Plaintiff has suffered serious emotional distress.

90.     The serious emotional distress suffered by Plaintiff is such that a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of this case.

91.     Defendants' breach of duty and negligence was the legal cause and proximate cause of the serious emotional distress suffered by Plaintiff.

92.     As a direct result of the above-described conduct, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer spiritually; was prevented and will continue to be prevented

from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## ELEVENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### (Against all Defendants)

93.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

94.    Defendants' conduct was extreme and outrageous and was intentional or done recklessly.

95.    Defendants knew or should have known their conduct would result in severe emotional distress to Plaintiff.

96.    As a result of Defendants' conduct, Plaintiff experienced and continues to experience severe emotional distress resulting in bodily harm.

97.    As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer spiritually; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained

and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## TWELFTH CAUSE OF ACTION
### (Premises Liability)
### (Against all Defendants)

98.     Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

99.     At all times herein mentioned, Defendants were in possession of the property where the Plaintiff was groomed and assaulted by the Perpetrator, and had the right to manage, use and control that property.

100.    At all times herein mentioned, Defendants knew the Perpetrator had a history of committing sexual assaults against children, and that any child at, among other locations, schools and parishes and retreat centers, was at risk to be sexually assaulted by the Perpetrator.

101.    Defendants knew or should have known, among other locations, schools, parishes and retreat centers, owned by and under the jurisdiction and control of Defendants, had a history of sexual assaults against children committed by the Perpetrator, and that any child at, among other locations, schools, parishes and retreat centers owned by and under the jurisdiction and control of Defendants, was at risk to be sexually assaulted.   It was foreseeable to Defendants the

Perpetrator would sexually assault children if they continued to allow the Perpetrator to teach, supervise, instruct, care for, and have custody, control of and/or contact with children.

102.   At all times herein mentioned, Defendants knew or should have known the Perpetrator was repeatedly committing sexual assaults against children.

103.   It was foreseeable to Defendants the sexual assaults being committed by the Perpetrator would continue if Defendants continued to allow the Perpetrator to teach, supervise, instruct, care for, and have custody of and/or contact with young children.

104.   Because it was foreseeable the sexual assaults being committed by the Perpetrator would continue if Defendants continued to allow him to teach, supervise, instruct, care for, and have custody of and/or contact with young children, Defendants owed a duty of care to all children, including the Plaintiff, exposed to the Perpetrator.  Defendants also owed a heightened duty of care to all children, including the Plaintiff, because of his young age.

105.   By allowing the Perpetrator to teach, supervise, instruct, care for, and have custody of and/or contact with young children, and by failing to warn children and their families of the threat posed by the Perpetrator, Defendants breached their duty of care to all children, including Plaintiff.

106.   Defendants negligently used and managed, among other locations,

schools, parishes and retreat centers owned by and under the jurisdiction and control of Defendants, and created a dangerous condition and an unreasonable risk of harm to children by allowing the Perpetrator to teach, supervise, instruct, care for and have custody of and/or contact with young children at, among other locations, schools, parishes and retreat centers owned by and under the jurisdiction and control of Defendants.

107.   As a result of the dangerous conditions created by Defendants, numerous children were sexually assaulted by the Perpetrator.

108.   The dangerous conditions created by Defendants were the proximate cause of Plaintiff's injuries and damages.

109.   As a result of these dangerous conditions, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer spiritually; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## THIRTEENTH CAUSE OF ACTION
### (Punitive Damages)
### (Against all Defendants)

110.   Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

111.   By reason of the above alleged acts, omissions, or conduct, Defendants acted willfully, wantonly, oppressively, and/or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, and/or with willful misconduct and/or that entire want of care which would raise a presumption of conscious indifference to the consequences of their conduct.  Defendants are therefore liable to Plaintiff for punitive damages in amounts to be determined at trial.  In addition, Plaintiff has a statutory right to seek punitive damages for the aforesaid violations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against each of the Defendants as follows:

a.    Judgment in favor of Plaintiff and against Defendants and each of them, jointly and severally, for general, special and compensatory damages in an amount proven at trial.

b.    Judgment in favor of Plaintiff and against Defendants and each of them, jointly and severally, for punitive and exemplary damages in an amount proven at

trial.

       c.     Pre and post-judgment interest, costs of suit, and attorneys' fees in favor of Plaintiff and against Defendants and each of them, jointly and severally.

       d.     Such further, supplementary or other relief as is appropriate and warranted to achieve a fair and just result in this case.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Arthur Porada, Jr. demands a trial by jury of the maximum number permitted by law, on all issues herein so triable.

Dated:  August 26, 2019        <u>/s/Michele M. Betti</u>
                         Michele M. Betti, Esq.
                         LAW OFFICES OF
                         BETTI & ASSOCIATES
                         Attorneys for Plaintiff
                         Arthur Porada, Jr.